**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH MICHAEL UPCHURCH** § | | **PLAINTIFF** |
| § | | |
| **v.** § | | **CAUSE NO. 1:10cv228-LG-RHW** |
| § | | |
| **CITY OF MOSS POINT, MOSS** § | | |
| **POINT POLICE DEPARTMENT,** § | | |
| **and SHEILA SMALLMAN, BOBBY** § | | |
| **JOHNSON, ANEICE LIDDELL,** § | | |
| **TOMMY HIGHTOWER, GEORGE** § | | |
| **MARTIN, SHERWOOD BRADFORD,** § | | |
| **SHIRLEY CHAMBERS, RUBY** § | | |
| **HILL, HOUSTON CUNNINGHAM,** § | | |
| **and ROBERT BYRD, in their** § | | |
| **individual capacities** § | | **DEFENDANTS** |
| § | | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FED.  R.  CIV.  P.  12(b)(6)**

BEFORE THE COURT is Defendants' [20] Motion to Dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Upchurch, a former police officer,

filed this lawsuit against the City of Moss Point ("the City") and the Moss Point Police

Department ("the police department"), as well as Chief of Police Sheila Smallman,

Deputy Chief of Police Bobby Johnson, Mayor Aniece Liddell, Alderman Tommy

Hightower, Alderman George Martin, Alderman Sherwood Brandford, Alderman

Shirley Chambers, Alderman Ruby Hill, Alderman Houston Cunningham, and

Alderman Robert Byrd in their official and personal capacities (hereinafter "the

individual defendants") after he was terminated from the Moss Point Police

Department.  Upchurch alleges discrimination based on race in violation of Title VII,

42. U.S.C. § 1983, 42 U.S.C. § 1981, and 42 U.S.C. § 1985.  He also alleges a constitutional tort claim under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and a state law defamation claim.

Defendants have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Mississippi Tort Claims Act, Miss Code Ann. §§ 11-46-1 *et seq*.  Upchurch opposes the motion in a response [25].  The Court has considered the briefs and relevant legal authority.  For the following reasons, Defendants' Motion to Dismiss [20] is GRANTED in part and DENIED in part.

## STANDARD OF REVIEW

In considering a motion to dismiss, the court accepts as true all well-pleaded facts and views them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).  However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570.)

## FACTS

This civil rights action arises from Plaintiff Upchurch's termination from his

employment with the Moss Point Police Department. The facts as Upchurch has alleged them are as follows.

Upchurch began working as a patrolman for the Moss Point Police Department in October 2001. (Compl. at 4 (¶ 20)). He was promoted to the rank of lieutenant sometime during the course of his employment with the police department, which encompassed a period of over eight years. (Compl. at 4-5 (¶ 20)).

Upchurch alleges that as a white police officer, he was subjected to racially discriminatory treatment at work. Specifically, Upchurch points to the fact that in January 2009, Chief of Police Sheila Smallman referred to Upchurch as "white boy" in the presence of an African-American detective. (Compl. at 6 (¶ 26)). The same month, Smallman appointed African-American officers to the positions of detective and corporal, without posting the positions or following the required civil service regulations for hiring for those positions. (Compl. at 5 (¶ 25)). Upchurch claims he was qualified for those positions, but he and other white officers were not given the opportunity to compete for them.[1] *Id.* Upchurch also alleges that in December 2008, Chief Smallman reassigned Upchurch from the night shift to the day shift, even though Upchurch had informed her that he would be attending classes during the day beginning in January 2009. (Compl. at 7 (¶ 30)). Upchurch claims a similarly-situated African-American employee was not treated this way. *Id.* Upchurch also alleges that

---

[1] According to the complaint, in February 2009, the Moss Point Civil Service Commission issued a decision stating that the promotions of the African-American officers should be made temporary, and that the positions should be posted for hiring in accordance with the Civil Service Commission rules. (Compl. at 6 (¶ 27)).

at some point after he had filed an internal complaint about discrimination, Chief Smallman told him he would be "punished" if he filed another complaint. (Compl. at 9 (¶ 36)).

In March 2009, Upchurch filed an EEO Complaint alleging discrimination based on his race and gender, citing the facts that he was denied promotion, denied a new patrol car despite being entitled to one based on seniority, and that he was given unfavorable work schedules.  (Compl. at 6 (¶ 27)).   The following month, in April 2009, Deputy Chief of Police Johnson issued a written reprimand against Upchurch for failing to appear in court, even though Upchurch had not received a subpoena and had notified his supervisor of his absence.  (Compl. at 6 (¶ 29)).  Upchurch claims that Johnson did not treat African-American employees in this manner. *Id.*  Additionally, Upchurch alleges that in February 2009, Deputy Chief Johnson took away Upchurch's take-home car privileges, but did not take those privileges away from any other officers.  (Compl. at 6 (¶ 28)).

On February 3, 2010, Upchurch was terminated from his position with the police department by the Mayor and the City's Board of Aldermen.  (Compl. at 7 (¶¶ 31, 46)). Upchurch claims that African-American officers had committed infractions similar to or worse than those alleged as the grounds for his own termination, but those African-American officers were not terminated for their infractions.  (Compl. at 7 (¶ 31)). Following his termination, Upchurch's duties were assumed by an African-American officer, despite the fact that a white officer who, according to Upchurch, was more qualified, had tried to apply for the position. (Compl. at 7 (¶ 32)).  On February 8, 2010,

4

Police Chief Smallman announced to approximately thirty individuals that the police department would take retaliatory action, including termination, against anyone who assisted Upchurch with his claims against the police department. (Compl. at 11 (¶ 47)).

Upchurch also makes other more general factual allegations, including that he and other similarly situated white employees were excluded from training sessions and other opportunities that would have enabled them to be eligible for promotions or transfers. (Compl. at 8 (¶ 33)). He also alleges that Police Chief Smallman and other defendants made false accusations to third parties regarding Upchurch's professionalism and work performance. (Compl. at 15 (¶ 58)).

## DISCUSSION

### I. Claims Against the Moss Point Police Department

Defendants move to dismiss Upchurch's claims against the Moss Point Police Department on the grounds that the police department lacks the capacity to be sued under Mississippi law.  Plaintiff Upchurch argues that because Defendants have not produced evidence that the City has not granted the police department the capacity to engage in separate litigation, Defendants' motion should fail.

The capacity of an entity to sue or be sued "shall be determined by the law of the state in which the district court is held." Fed.R.Civ.P. 17(b); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). The Fifth Circuit has explained that in order for a plaintiff to sue a city department, it must "enjoy a separate legal existence." *Darby*, 939 F.2d at 313 (affirming dismissal of claims against Pasadena Police Department because plaintiff failed to show that the City had granted its police

department the capacity to engage in separate litigation; therefore, the police department did not exist as a legal entity for the purposes of the lawsuit) (citations omitted).

This Court has previously addressed the issue of whether a police department is a separate legal entity with the capacity to be sued under Mississippi law. In *Stewart v. Jackson County*, this court considered the question *sua sponte* pursuant to Federal Rule of Civil Procedure 41, and held that "[u]nder Mississippi law, a city's police department is not considered to be an entity separate from the city." *Stewart v. Jackson Co., Miss.*, No. 1:07-CV-1270-WJG-JMR, 2008 WL 4287112 at *1 (S.D. Miss. Sept. 16, 2008) (citing Miss. Code Ann. § 21-17-1). Stewart's claims against the Biloxi Police Department were dismissed because the department was not a proper party to the lawsuit. *Id.* at *1 (citing *Darby v. Pasadena Police Dep't*, 939 F. 2d 311, 313 (5th Cir. 1991)). *See also Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992)("[P]olice departments are not usually considered legal entities subject to suit[.]")

The Moss Point Police Department is not a proper defendant because, as a matter of state law, it is not a separate legal entity for purposes of litigation. There is no indication that the Moss Point Police Department enjoys a separate legal existence from the City. Accordingly, Upchurch's claims against Defendant Moss Point Police Department are dismissed.

## II. Title VII Claims

Defendants move to dismiss Upchurch's claims under Title VII against the individual defendants. Defendants argue that employees cannot be sued in their

individual capacities under Title VII, and that the individual defendants cannot be held liable if the employer, the City, is a named defendant.  Upchurch's response does not address Defendant's motion to dismiss regarding Title VII.

Under Title VII, it is illegal "for an employer to . . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  In order for an individual to be liable under Title VII, he or she must meet title VII's definition of "employer." *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994).  Title VII defines "employer" as: "a person engaged in an industry affecting commerce who has fifteen or more employees . . . . and any agent of such a person[.]" 42 U.S.C. § 2000e(b). "The term 'person' includes one or more individuals, governments, governmental agencies, political subdivisions . . . ." 42 U.S.C. § 2000e(a).

Although Title VII defines "employer" to include any agent of the employer, the Fifth Circuit does not interpret the statute to impose individual liability on the agent. *Jackson v. David Wade Corr. Ctr.*, No. 07-CV-1420, 2008 WL 4500325 at *4 (W.D. La. Oct. 6, 2008) (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (affirming Rule 12(b)(6) dismissal where trial court held that employees may not be sued for damages in their individual capacities)).  The Fifth Circuit has held that "relief under Title VII is available only against an employer, not an individual supervisor or fellow employee." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003) (citing *Grant*, 21 F.3d at 651-53); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their

individual or official capacities").

Here, the individual defendants do not meet the definition of "employer" under Title VII.  Upchurch may proceed with his Title VII claims against the City, but the individual defendants are not liable under Title VII.  Accordingly, Defendants' motion to dismiss Upchurch's Title VII claims against the individual defendants is GRANTED.

## III.  Claims Against the Individual Defendants under Sections 1983 and 1981

Defendants move to dismiss Upchurch's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 against the individual defendants in their official and personal capacities.  Section 1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights.  Section 1983 does not itself create any federally protected right, but creates a cause of action for persons to enforce federal rights created elsewhere, including other federal statutes and the United States Constitution. *Chapman v. Houston Welfare Rights Org.*, 441, U.S. 600, 608 (1979) (Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.").  Upchurch has alleged Defendants deprived him of his equal protection and due process rights under the 14th Amendment to the United Constitution.  Upchurch's § 1983 claims are against all Defendants, including the individual defendants in both their official and personal capacities.

Section 1981 provides that all persons "have the same right to make and enforce contracts . . . as is enjoyed by white citizens."[2]  It "is designed to include a federal

---

[2]Section 1981 prohibits racial discrimination against Caucasians as well as persons of other races. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 296

remedy against discrimination in employment on the basis of race." *Adams v. McDougal*, 695 F.2d 104 (5th Cir. 1983) (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60 (1975)).  Upchurch's 1981 claims are also against all Defendants, including the individual defendants in both their official and personal capacities.

The law of this Circuit is that § 1981 claims may not proceed independently against a government actor in his official capacity.  *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458 at 463-64 (5th Cir. 2001) (relying on *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989)).  Instead, § 1981 claims must be brought through § 1983.  *Id.* Defendants move to dismiss all of Upchurch's claims under § 1981 if those claims were brought independently, and not alleged under § 1983.  (Def.'s Mot. at 4, fn 1.) Upchurch submits that his § 1981 claims are brought through § 1983 and as an independent cause of action. (Plaintiff's Resp. at 7).

Upchurch's equal right to make and enforce contracts is guaranteed by § 1981, but his cause of action for a violation of that right must be alleged under § 1983.  Count II of Upchurch's complaint is entitled "Civil Rights Claim for Racial Discrimination under 42 U.S.C. Sec. 1981." (Compl. at 9).  Count II makes no reference to § 1983. However, Count III of the complaint, which sets forth Upchurch's claims under § 1983, "re-alleges and incorporates by reference all of the foregoing allegations" and alleges a denial of rights under section 1983 "as described in Count[ ] . . . II above." (Compl. at 10 (¶¶ 41, 44)). While Upchurch may not proceed with an independent 1981 claim,

---

(1976).

the Court finds that he has sufficiently alleged his § 1981 claims through § 1983. Upchurch's claims under § 1981 will be construed and evaluated as claims brought under § 1983.

*Claims Against the Defendants in their Official Capacities*

Defendants argue that Upchurch's claims against the individual defendants in their official capacities should be treated as a suit against the City, and therefore be dismissed.

The Supreme Court has held that claims against a governmental agent in his or her official capacity are not against the actual employee, but are against the office that the employee holds. *Kentucky v. Graham*, 437 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55) (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). *See also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Upchurch's claims against the individual defendants are effectively claims against the City of Moss Point.  Given that the City of Moss Point is a named defendant, the official capacity claims against individual officials are redundant of the suit against the City.  Federal courts have held that in such a case, official capacity claims against individual officials may be dismissed as duplicative or redundant of the municipal entity claims. *See Burnett v. City of Southaven*, No. 2:08-CV-45-P-A, 2009 WL 1683981 at *1 (N.D. Miss. June 15, 2009) ("The official capacity claim is tantamount to a claim against the City . . . . [a]ccordingly, the official capacity claim . . . is redundant and . . . . should be dismissed.") (citing *Roberts v. City of Shreveport*,

397 F.3d 287, 291 (5th Cir. 2005)); *Cooper v. City of Plano*, No. 4:10-CV-689, 2011 WL 4100721 at *4 (E.D. Tex. Aug. 19, 2011) (holding official capacity claims were redundant of claims against the City, and should be dismissed); *Cotton v. District of Columbia*, 421 F. Supp. 2d 83, 86 (D.D.C. 2006) (calling duplicative cases suing government officials in their official capacity "redundant" and an "inefficient use of judicial resources"). *But see Knox v. City of Monroe*, No. 07-CV-606, 2009 WL 57115 (W.D. La. Jan. 8, 2009) at *5 n. 12 (stating that official capacity claim is redundant, but not uncognizable, because it merges with claim against the City).

Accordingly, Defendants' motion to dismiss Upchurch's claims against the individual defendants in their official capacities is GRANTED.  Upchurch may proceed with his claims against the City, which must satisfy the municipal liability test.  *See McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 313 (5th Cir.2002 )*; Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell*, 436 U.S. at 695.

*Claims Against the Individual Defendants in their Personal Capacities*

Upchurch also seeks to hold the individual defendants liable in their personal capacities.  Defendants claim that the individual defendants are entitled to the defense of qualified immunity.[3]  Upchurch argues that the individual defendants are not

---

[3] It is not entirely clear that the individual defendants could be subject to liability under § 1981 regardless of whether they are entitled to the defense of qualified immunity. *See Oden v. Oktibbeha County, Miss.*, 246 F.3d 458 (5th Cir. 2001) (holding the sheriff was not personally liable under § 1981, stating that "when a plaintiff asserts a cause of action under § 1981 for discrimination in the terms and conditions of a municipal employment contract, the proper defendant is the government employer in his official capacity.")  *See also Foley v. Univ. of Houston Sys.*, 355 F. 3d 333, 338 (5th Cir. 2003) ("the issue of qualified immunity arises only if the individual official is

entitled to qualified immunity because they violated his clearly-established constitutional rights.  He also argues that the Defendants have not properly pled the defense of qualified immunity, and in the alternative moves to amend his complaint and file a reply under Federal Rule of Civil Procedure 7 and *Schultea v. Wood*, 47 F.3d 1427 (5th Cir.1995).

 "Claims against individual public officials under § 1981 are subject to the defense of qualified immunity . . . as are claims against such individuals under § 1983." *Foley v. Univ. of Houston Sys.* 355 F.3d 333, 338 (5th Cir. 2003) (citing *Todd v. Hawk*, 72 F.3d 443, 445 n. 7 (5th Cir. 1995); *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 996 n. 21 (5th Cir. 1995); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997)).  "Qualified immunity balances two important interests– the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  If an official's conduct was objectively reasonable, it does not matter

---

subject to liability in the first place, and § 1981 liability does not necessarily run to all individual defendants") (discussing *Harvey v. Blake*, 913 F.2d 226, 228 (5th Cir. 1990), *Felton v. Polles*, 315 F.3d 470 (5th Cir. 2002), and *Oden*, 246 F.3d 458.)  Defendants do not raise the issue of whether the individual defendants could be liable under § 1981 "in the first place," so the Court will not address the question today.

if that official's conduct violated a constitutional right; he is still entitled to qualified immunity. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996).

In evaluating a claim of qualified immunity, the court considers (1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson*, 555 U.S. 223 (2009). Courts have discretion to determine which of these questions to address first. *Pearson*, 555 U.S. at 236.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. *See also Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.") Moreover, each defendant's actions must be evaluated individually. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007). *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009) ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Therefore, in order to overcome Defendants' defense of qualified immunity, Upchurch's complaint must allege facts that, if true, demonstrate that each individual defendant violated his rights by acting in a way that he or she should have known was

unlawful.  "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that '*every* reasonable official would understand that what he is doing violates [the law].'" *Morgan v. Swanson*, ---- F.3d ----, 2011 WL 4470233 at *7 (5th Cir. Sept. 27, 2011) (citing *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2083 (2011)).  The Court examines Upchurch's claims against each of the defendants in light of this standard.

<u>Police Chief Smallman</u>

Upchurch has alleged a number of specific factual allegations against Police Chief Sheila Smallman.  Upchurch alleges that Smallman denied Upchurch an opportunity for promotion when she appointed a "black female officer . . . to the position of detective," and appointed a "black male officer . . . to the position of corporal" without giving "qualified white officers, including Upchurch . . . the opportunity to compete for these positions." (Compl. at 5 (¶ 25)).  Upchurch claims his qualifications for those positions were superior to the officers appointed by Smallman. *Id.*  Upchurch further alleges that Smallman discriminated against him by "using racial slurs and harassment," specifically by calling him "white boy." (Compl. at 6 (¶ 26)).  Upchurch also alleges that Smallman reassigned him from the night shift to the day shift, despite her knowledge that Upchurch was attending classes in the mornings. (Compl. at 7 (¶ 30)).  Upchurch maintains that a similarly situated black employee's schedule was not changed while that employee attended school. *Id.*  Upchurch also alleges that after he filed an internal complaint about discrimination, Smallman told him he would be "punished" if he filed another such complaint. (Compl. at 9 (¶ 36)).

Finally, Upchurch claims that Smallman "announced to approximately 30 individuals on February 8, 2010, that retaliatory action, including termination . . . would be taken . . . against any police officer or witness who . . . assisted . . . Upchurch's claims against the Police Department." (Compl. at 11 (¶ 47)). Defendants do not address Upchurch's specific allegations regarding Police Chief Smallman.

The Court finds that Upchurch's allegations against Smallman are not merely conclusory and, if taken as true, would establish the violation of a clearly-established right. Upchurch has alleged that as a result of Smallman's and the other defendants' discrimination against him, he was deprived of his rights under the Equal Protection Clause of the 14th amendment. "In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 229, 238-42 (1976)). An objectively reasonable official knows that intentional discrimination based on race is illegal. *Moini v. Univ. of Tex.*, No. A-10-CA-180-SS, 2011 WL 90472 at *11 (W.D. Tex. Jan. 10, 2011) (citing *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1181 (9th Cir. 1998)). Additionally, a reasonable official would know that retaliating against an employee for exercising his right to file an EEOC complaint is illegal. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003). The Court finds that the facts as alleged against Police Chief Smallman are sufficient to draw an inference that Smallman violated Upchurch's clearly established rights. Accordingly, Defendants' motion to dismiss Upchurch's

15

claims against Police Chief Smallman in her personal capacity is DENIED.

    Deputy Chief Johnson

    Upchurch has also made specific factual allegations against Deputy Chief of Police Bobby Johnson.  Upchurch alleges that Johnson took retaliatory action against him after he filed an EEOC complaint. (Compl. at 6 (¶ ¶ 28, 29)).  Upchurch alleges that Johnson retaliated against Upchurch by "taking away his take-home car privileges" and issuing a written reprimand against Upchurch that was unwarranted.[4] (Compl. at 6 (¶ 28-29)).  Upchurch maintains that "similarly situated black employees were not treated this way." *Id.* at ¶ 29.  Defendants do not address Upchurch's specific allegations regarding Deputy Chief Johnson.

    The Court finds that with respect to Deputy Chief Johnson, Upchurch has sufficiently alleged a violation of a clearly established right to overcome Johnson's qualified immunity.  Upchurch's factual allegations against Johnson, while slim, are enough to draw an inference that Johnson violated Upchurch's federally protected rights.  Upchurch's allegation against Johnson appears to be that he retaliated against Upchurch for filing an EEO complaint in violation of Title VII.  A prima facie case of retaliation requires that a plaintiff show (1) he engaged in activity protected activity; (2) he was subject to an adverse employment action; and (3) there was a causal

---

[4] According to the complaint, Upchurch filed his EEO complaint on March 14, 2009 (Compl. at 6 (¶ 27)), and Johnson took away Upchurch's car privileges on February 27, 2009. (Compl. at 6 (¶ 28)).  Upchurch has not explained how this action, taken weeks *before* he filed his EEO complaint, was in retaliation for his filing the complaint.

connection between the adverse action and the protected activity. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). The Court finds that if the facts as Upchurch has alleged them are true, Upchurch has sufficiently met the elements of retaliation. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (internal quotations and citations omitted). Again, any reasonable official would know that retaliating against an employee for exercising his right to file an EEOC complaint is illegal. *See Foley*, 355 F.3d at 339. Accordingly, Defendants' motion to dismiss Upchurch's claims against Johnson in his personal capacity is DENIED.

### Mayor Liddell and the Board of Aldermen

Upchurch alleges that Mayor Aneice Liddell and Aldermen Tommy Hightower, George Martin, Sherwood Brandford, Shirley Chambers, Ruby Hill, Houston Cunningham, and Robert Byrd "discriminated and retaliated against [him] by wrongfully terminating his employment, making false accusations against him and denying him due process" under the 14th amendment to the U.S. Constitution. (Compl. at 7 (¶ 31)). Upchurch also alleges that the Aldermen "decided that a pre-termination hearing was 'not necessary,'" (Resp. at 17), and that the Mayor and the Aldermen "decided upon his termination of employment before Upchurch appealed it to the Civil Service Commission." *Id.* at 15. Upchurch claims that the Mayor and Aldermen took these actions against him "due to discrimination and retaliation." *Id.* at 20. Upchurch

submits that Defendants took no action against several black employees who committed various infractions, even though their infractions were similar or worse than those given as the grounds for Upchurch's termination. (Compl. at 7 (¶ 31)). Upchurch does not plead specific facts with respect to the Mayor or the individual Aldermen; he makes these assertions against the defendants as a group.

The Supreme Court has recognized a procedural due process right to notice and an opportunity to clear one's name when the employee's "good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972). These are procedural requirements, which do not "arise unless the plaintiff can allege some deprivation of liberty or property as set forth in the Fourteenth Amendment." *Hughes v. City of Garland*, 204 F.3d 223 (5th Cir. 2000) (citing *Perry v. Sindermann*, 92 S.Ct. 2694, 2698 (1972); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 251 (5th Cir.1984); *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 548 (5th Cir.1989)).

Upchurch alleges that he had a Fourteenth Amendment property interest in his employment with the police department, which was violated when he was terminated. The Supreme Court has held that a federal constitutional claim depends upon the plaintiff having had a property right in continued employment; if he did, he must be afforded due process before being deprived of that right. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (internal citations omitted). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state

18

law. . . .'" *Id.* at 538 (citing *Roth*, 408 U.S. at 577).

As a police officer, Upchurch could not be removed or discharged "except for cause." Miss. Code Ann. § 21-31-23.  Under that statute, the official charged with the termination decision "may, in his discretion, provide for a pretermination hearing."[5] *Id.* Assuming that Upchurch had a property interest in his employment, Upchurch has alleged a violation of the Fourteenth Amendment.  However, the Court finds that Upchurch has not adequately alleged that the Mayor and the individual Aldermen violated his "clearly-established" constitutional rights.  Even if Upchurch's due process rights under the Fourteenth Amendment were violated – and the Court does not make a finding on that issue today – the Mayor and the Board of Aldermen are entitled to the defense of qualified immunity as long as their actions were objectively reasonable. *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (5th Cir. 1996) ("even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable.")  "[G]overnment officials performing discretionary functions [enjoy] qualified immunity, . . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  The *Good* court emphasized this point, noting that "qualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.' *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

---

[5] It is not clear whether Upchurch is challenging the constitutionality of Miss. Code Ann. § 21-31-23, or if he alleges only that his own termination lacked due process.

The allegations Upchurch has made against the Mayor and the Aldermen are conclusory in nature and do not provide a factual basis to infer that those defendants' actions were not objectively legally reasonable. Upchurch has not alleged facts that would allow the Court to draw the inference that the Mayor and each of the Board of Aldermen knew his or her actions were unlawful when Upchurch was terminated. The Court finds that Upchurch's complaint has not pleaded facts sufficient to overcome the Mayor's or the Aldermen's defense of qualified immunity. Accordingly, Defendants' motion to dismiss Upchurch's claims against Mayor Liddell and the Board of Aldermen in their personal capacities is GRANTED.[6]

## IV. Claims under Section 1985

Defendants move to dismiss all of Upchurch's claims under 42 U.S.C. § 1985. In his complaint, Upchurch alleges that "Chief Smallman, the Moss Point Police Department, and the other Defendants" discriminated against him in violation of § 1985. (Compl. at 12 (¶ 49)). Upchurch claims that Defendants violated § 1985(3) by

---

[6] Upchurch relies on *Schultea v. Wood*, 47 F.3d 1427 (5th Cir.1995), to argue that Defendants' motion to dismiss should be denied. *Schultea* held that "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail." *Id.* at 1433. A *Schultea* reply, pursuant to Federal Rule of Civil Procedure 7(a), is appropriate when a court finds that a plaintiff has failed to plead sufficient detail in his complaint to address the affirmative defense of qualified immunity raised by a defendant. *Schultea*, 47 F.3d at 1433. In the circumstances before the Court, Upchurch became aware that Defendants were raising the defense of qualified immunity when Defendants filed the instant motion. Upchurch had the opportunity to address Defendants' qualified immunity in his response, and Upchurch has done so. There is no need to invoke the process of filing a *Shultea* reply at this juncture.

conspiring "to deprive Upchurch of the equal protection of the law" and "[a]greeing to deny Upchurch equal hiring, promotions, and wages, and . . . . to harass him, retaliate against him, and terminate his employment;" and "[c]alling a meeting of police officers and directing them not to serve as witnesses or to assist Upchurch in appealing his termination." (Compl. at 12 (¶¶ 51-52)).

Section 1985 provides a cause of action for civil rights conspiracies that deprive a person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws. *See* 42 U.S.C. § 1985(3).  To establish a violation of § 1985(3), a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983).  The Supreme Court has made it clear that a violation of § 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1983).

Defendants argue that Upchurch's § 1985 claims should be dismissed because Upchurch "has not alleged interference in a federal court case or a state court case." (Resp. at 7).  Defendants' argument is misplaced.  Defendants' contention that Upchurch must allege interference in the administration of justice in a federal or state court would be correct if Upchurch had only alleged a violation of § 1985(2).

21

Upchurch's complaint alleges a violation of §1985(3), which does not address interference with the administration of justice in a state or federal court.   Defendants' motion does not argue that the facts as alleged in Upchurch's complaint fail to establish the required elements of a claim under § 1985(3).   Accordingly, Defendants' motion to dismiss Upchurch's claims under § 1985 is DENIED.

## V.  *Bivens* **claims**

Upchurch's complaint also alleges a cause of action under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (Compl. at 13 (¶ 54)).   Defendants move to dismiss Upchurch's claims under *Bivens* on the grounds that Upchurch has not asserted any claims against federal actors.   Upchurch does not respond to Defendants' motion to dismiss his *Bivens* claims.

*Bivens* is the "federal analog" to § 1983; it provides a cause of action against federal actors similar to the cause of action that § 1983 provides against state actors. *Hartman v. Moore*, 547 U.S. 250, 254 n. 2 (2006).   Here, Upchurch has sued the City of Moss Point, the Moss Point Police Department, and a number of employees of the City.   None of the defendants are alleged to be federal actors.   Therefore, *Bivens* is not applicable.   Accordingly, Defendants' motion to dismiss Upchurch's claims under *Bivens* is GRANTED.

## VI.  **Defamation claim**

Upchurch has also alleged the tort of defamation, claiming that Defendants made false accusations against him to third parties.   (Compl. at 14-15 (¶ 58)). Defendants move to dismiss Upchurch's defamation claim on the grounds that it is

barred by the applicable statute of limitations. (Def's. Mot. at 8).  Upchurch's response to the motion to dismiss does not address Defendants' arguments regarding his defamation claim.

The statute of limitations applicable to defamation claims in Mississippi is one year.  Miss. Code Ann. § 15–1–35.[7]  "The statute of limitations for defamation and libel begins to run from the date that the allegedly libelous statement was published to a third person." *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953 (5th Cir. 1994) (citing *Brocato v. Miss. Publishers Corp.*, 503 So.2d 241, 242 (Miss.1987)). *See also Ellisville State Sch. v. Merrill*, 732 So.2d 198, 200 (Miss.1999) (citing *Forman v. Miss. Publishers Corp.*, 195 Miss. 90, 14 So.2d 344, 347 (1943)(Mississippi adheres to the "single publication rule.")).

Defendants point out that "January 26, 2009" is the only date Upchurch's complaint references with respect to his defamation claim.  Upchurch's complaint alleges that on January 26, 2009, Police Chief Smallman "degraded Upchurch and several other officers" by "referring to them as 'those white boys.'" (Compl. at 15 (¶

---

[7] Miss. Code Ann. § 15-1-35 provides:

> All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.

58)).[8]

Upchurch makes a number of other factual allegations under his defamation claim, but does not reference dates with respect to those allegations. Defendants submit that the other items alleged under Upchurch's defamation claim "were addressed by the Civil Service Commission on January 26, 2009 and February 3, 2009," and that "the Civil Service Commission's findings were issued on February 4, 2009." (Resp. at 8). However, it is not clear from Upchurch's complaint whether he claims that the other allegedly defamatory statements were published for purposes of the defamation statute by the Civil Service Commission's findings. Likewise, Upchurch's response to the instant motion provides no additional information with respect to his allegations of defamation.

The Court finds that because it is not clear from Upchurch's complaint when he claims the majority of the alleged defamatory statements were made, Defendants' motion to dismiss Upchurch's defamation claims because they are time-barred is not well-taken. Without more information, the Court cannot determine when the applicable statute of limitations began to run, or whether Upchurch's complaint was timely filed. Therefore, Defendants' motion to dismiss Upchurch's defamation claim

---

[8] Upchurch's complaint states that "Smallwood" referred to Upchurch and other officers as "those white boys." The Court assumes that the reference to "Smallwood" is an error and that the complaint alleges that Police Chief Smallman made this statement.

is DENIED.[9]

## VII.  Intentional Infliction of Emotional Distress

Defendants also move to dismiss "any claims made [by Upchurch] related to the intentional infliction of emotional distress" on the grounds that Upchurch did not comply with the mandatory notice requirement for such a claim under the Mississippi Tort Claims Act (MTCA). *See* Miss. Code Ann. § 11-46-11(1).[10]

Upchurch's complaint makes a brief reference to "mental anguish and emotional distress" in Count V, which sets forth Upchurch's claim under *Bivens*. (Compl. at 13-

---

[9] Defendants do not assert that the City of Moss Point is entitled to immunity with respect to Upchurch's defamation claim.  The Mississippi Torts Claims Act (MTCA) provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit.  *See* Miss. Code Ann. § 11-46-7. Under the provisions of the MTCA,"actions that constitute . . . . defamation occur outside the course and scope of employment, and the municipality has not waived immunity from suit with respect to such acts and cannot be held liable for them." *Gilmer v. Trowbridge*, No. 3:08-CV-136-TSL-JCS, 2009 WL 649692 at *11 (S.D. Miss., March 10, 2009). *See* Miss. Code Ann. §§ 11-46-5(2), 11-46-7(2); *Evans v. Miss. Dep't of Human Servs.*, 36 So. 3d 463, 476 ¶ 55 (Miss. Ct. App. 2010) ("Certain intentional torts, such as defamation, are excluded from the MTCA's waiver of immunity."). Because Defendants have not raised the affirmative defense of immunity with respect to Upchurch's defamation claim, the Court will not reach the issue.

[10] Miss. Code Ann. § 11-46-11(1) provides in part:

> After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.

14).  Count V is entitled "Constitutional Tort under Bivens and Punitive Damages Mental Anguish and Emotional Distress." (Compl. at 13).  Under Count V, Upchurch states that "*Bivens* provides recovery for torts committed in the process of depriving a person of his constitutional rights," and that several of the defendants "committed a constitutional tort against Upchurch by . . . [c]ausing Upchurch to suffer job stress, intentional and negligent infliction of emotional distress, and various medical injuries, as a result of their tortious actions resulting from the constitutional violations." (Compl. at 13 (¶ 55)).

Defendants' motion presumes that Upchurch alleges a claim of intentional infliction of emotional distress under the MTCA.  But as set forth above, it is not clear from Upchurch's complaint that he is alleging a state law claim of intentional infliction of emotional distress.  The only reference to "emotional distress" in Upchurch's complaint is within his constitutional tort claims under *Bivens*.  In Upchurch's response to the instant motion, he argues (i) he can seek compensatory damages for emotional distress under federal statutes Title VII, § 1981, and 1985 without being subject to the requirements of the MTCA; and (ii) the "public policy purpose" of the notice provision under the MTCA is to put the defendant municipality on notice of the allegations, and Defendants had timely notice of his claims. (Resp. at 29-31).[11] Upchurch does not attempt to argue that he complied with the specific requirements

---

[11] Upchurch's response also never explicitly states that Upchurch's complaint has in fact alleged a claim of intentional infliction of emotional distress under state law.

of Miss. Code Ann. § 11-46-11.  Instead, he claims that the purpose of the statute was met because Defendants had notice of Upchurch's claims based on his EEOC complaints and a grievance against Police Chief Smallman filed in 2009, and the Notice of Claim he filed in February 2011.

Upchurch's complaint does not appear to have alleged a claim of intentional infliction of emotional distress under the MTCA, but to the extent Upchurch does seek to allege such a claim, he has not met the requirements of Miss. Code Ann. § 11-46-11. Accordingly, the motion to dismiss Upchurch's claims of intentional infliction of emotional distress under the MTCA is GRANTED.  The Court does not rule on Defendants' arguments, made only in rebuttal, that Upchurch cannot seek compensatory damages for emotional distress under the federal statutes pled in his complaint.

## VIII.  Punitive Damages

Defendants move to dismiss all of Upchurch's claims for punitive damages against the City of Moss Point on the grounds that the City is a governmental entity. In his response, Upchurch argues that § 1981 allows the award of punitive damages against a municipality, citing *Sethy v. Alameda County Water Dist.*, 545 F.2d 1157 (9th Cir. 1976).[12]

---

[12] Despite the fact that Upchurch makes this argument in his response, Upchurch's complaint does not appear to seek punitive damages under § 1981.  The only references to requests for punitive damages found in Upchurch's complaint are in Count V (*Bivens* claims) and Count VII (defamation claim). (Compl. at 13-15 (¶¶ 56, 59)). The "Relief Requested" in Upchurch's complaint states specifically: "Punitive damages for defamation and *Bivens* claims, in the amount of $2 million." (Compl. at

Defendants' motion does not discuss Upchurch's ability to recover punitive damages under any statute other than 42 U.S.C. 1981a(b)(1). Section 1981a(b)(1) provides that "[a] complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice[.]"   Upchurch does not address Defendants' arguments pursuant to § 1981a.  Defendants are correct that under the express language of that statute, a plaintiff may not recover punitive damages against a government or a political subdivision, which would include the City of Moss Point.  Therefore, to the extent Upchurch's complaint seeks damages pursuant to 42 U.S.C. 1981a, an award of punitive damages will not be permitted against the City.[13]

Upchurch's complaint seeks punitive damages for his claims under *Bivens* and his defamation claim.  Defendants do not specifically address Upchurch's request for punitive damages with respect to his *Bivens* claims, however, as set forth above, Upchurch's *Bivens* claims are dismissed.  Accordingly, Upchurch will not be entitled to seek punitive damages on those claims.

Likewise, Defendants do not address Upchurch's request for punitive damages

---

17).  No other punitive damages claims are mentioned in the "Relief Requested" section of the complaint.  Regardless, the Court is not convinced by Upchurch's argument that § 1981 permits the award of punitive damages against a municipality.  *See Heritage Homes of Attleboro, Inc. v. Seekonk Water Dist.*, 670 F.2d 1 (1st Cir. 1982).

[13] Upchurch's complaint does not appear to seek punitive damages under § 1981a.

with respect to his defamation claim.  Upchurch's defamation claim is not dismissed, but regardless, Upchurch will not be entitled to punitive damages from the City of Moss Point.  Under Mississippi law, punitive damages are not recoverable against a municipality unless authorized by statute. *Town of Newton v. Wilson*, 91 So. 419 (Miss. 1922).  Moreover, the MTCA provides that punitive damages are not permitted against governmental entities, even in actions for which governmental immunity is waived. *See* Miss. Code Ann. 11-46-15(2). Upchurch has not pointed to any statute that would permit the award of punitive damages against the City of Moss Point for the tort of defamation, or any other claim.[14]

It is not clear whether or on what grounds Defendants may be seeking a dismissal of claims for punitive damages against the individual defendants.  The motion does reference, in its final lines, a request that the Court dismiss "all claims for punitive damages against the City of Moss Point and the individual Defendants," but Defendants make no arguments regarding claims for punitive damages against the individual defendants, and provide no basis on which such claims should be dismissed. (Def.'s. Mot. at 9).  Additionally, Upchurch's complaint is not specific as to which individual defendants, if any, he may seek to hold liable for punitive damages. Therefore, the Court will not reach the issue of whether the individual defendants may

---

[14]  It does not appear that Upchurch is seeking punitive damages against the City of Moss Point under § 1983 or Title VII, as noted *supra*.  Neither of these statutes provides for punitive damages awards against a municipality.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261 (1981); *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 465-66 (5th Cir. 2001); 42 U.S.C. § 1981a(b).

be liable for punitive damages at this time.

Defendants' motion to dismiss Upchurch's claims for punitive damages against the City of Moss Point is GRANTED.

## **CONCLUSION**

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated herein, Defendants' Motion to Dismiss [20] is GRANTED in part and DENIED in part.

**SO ORDERED AND ADJUDGED** this the 26th day of October, 2011.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE